```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

ALEXIS JOHNSON,

                        Plaintiff,

      -vs-                            **No. 1:14-CV-00353 (MAT)**
                                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                       Defendant.
_____

**I.    Introduction**

Represented by counsel, Alexis Johnson ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II.   Procedural History**

The record reveals that in April 2011, plaintiff (d/o/b March 9, 1983) applied for SSI, alleging disability as of November 25, 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Eric L.


Glazer ("the ALJ") on December 12, 2012. The ALJ issued an unfavorable decision on February 6, 2013. The Appeals Council denied review of that decision and this timely action followed.

## III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 27, 2011, the application date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: schizoaffective disorder, post-concussion syndrome, and migraine headaches. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she retained the ability to perform the basic mental demands of unskilled work, including the ability to understand, remember, and carry out simple instructions, with occasional contact with the public supervisors, and coworkers.

At step four, the ALJ found that plaintiff could perform her past relevant work as a dishwasher. Alternately, at step five, the

ALJ found that considering plaintiff's age, work experience, and RFC, there were significant numbers of jobs in the national economy which she could perform. Accordingly, he found that she was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff's primary contention is that the ALJ erred in failing to properly develop the record, given that the record indicates that regular treatment notes exist from plaintiff's weekly mental health treatment, but the ALJ did not recontact treating sources in order to obtain them. The Court agrees with plaintiff that the ALJ did not properly develop the record in this case, which resulted in a finding unsupported by substantial evidence.

The medical record in this case is sparse. The earliest record of treatment reveals that from June 19, 2007 through July 5, 2007, plaintiff was hospitalized at Erie County Medical Center ("ECMC")

following an incident in which she was found rummaging through a stranger's car and when caught, pulled a steak knife on the stranger. Treatment notes stated that plaintiff could not "give an account of herself," noting that she was "somewhat grandiose about writing a book, winning a contest." T. 268. She was noted as "increasingly odd," demanding that her friend was her wife, behavior which resulted in that friend obtaining an order of protection.

Plaintiff, who was age 24 at the time, was diagnosed with bipolar disorder, manic, with psychotic features, with notes to rule out schizoaffective disorder and alcohol dependence. During her hospital stay, she was started on Geodon (an antipsychotic medication for treatment of schizophrenia and bipolar disorder), which resulted in a gradual decrease in her grandiosity. However, because she "remained somewhat hyperactive with an elevated affect and mood," she was prescribed a gradually increasing dose of Depakote (an anticonvulsant and mood stabilizer, used for treatment of seizures, bipolar disorder, and migraines), after which she "show[ed] improvement in her mood control and remained in good behavioral control." T. 269. Her global assessment of functioning at discharge was assessed at 45-50, indicating serious symptoms (such as suicidal ideation) or a serious impairment in social or occupational functioning.. See Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental Disorders-Text Revision ("DSM-IV-TR"),

at 34 (4th ed., rev. 2000). Although this hospitalization occurred prior to the relevant time period in this case, it is certainly informative regarding plaintiff's serious mental health history.

Plaintiff also received treatment for conditions resulting from a fall in late November 2010. She reported to ECMC that she had been pushed down, hit her face, and lost consciousness. Plaintiff sustained a left frontal skull fracture and facial fractures. On observation in the hospital, she was agitated and "required one-on-one observation"; it was noted that she had a history of bipolar disorder with psychotic features. T. 265. In April 2011, plaintiff treated at Community Health Center ("CHC") in Buffalo, reporting dizziness, nausea, vomiting, and forgetfulness since her fall. She also reported that although she had been diagnosed with bipolar disorder, she was not taking medications at that time. Plaintiff was diagnosed with bipolar disorder and postconcussion syndrome. Medical records also indicate that since her fall, she reported chronic headaches.

The record indicates, and plaintiff testified, that she treated at Northwest Community Health Center ("NCHC") for mental health issues, on a weekly basis from September 2011 through at least November 2012. The Administration requested treatment records from ECMC; however, in November 2012 Amanda A. Prus, LMSW submitted a letter "in lieu of records from 9/10/[11] to present." T. 289. The letter stated that plaintiff had three periods of treatment

with NCHC, beginning in 2007, and most recently in September 2011 when she "request[ed] help with getting back on her psychotropic medications." Id. LMSW Prus stated that plaintiff had been treating weekly for medication management with a nurse practitioner. According to LMSW Prus, plaintiff had had issues with medication compliance[1] and using alcohol, but "[had] however been able to stay out of the hospital and jail." Id. Her current prescriptions were Haldol (an antipsychotic), Depakote, and Cogentin (for treatment of side effects of antipsychotic medications), and she carried a diagnosis of shizoaffective disorder. Despite LMSW Prus's clear statement that regular mental health treatment notes existed in plaintiff's case, the ALJ did not make any further attempt to obtain those documents.

Dr. Jeffrey Grace, of NCHC, completed a mental RFC questionnaire, also in November 2012. Dr. Grace noted that plaintiff had not had a psychiatric admission since 2007. He confirmed plaintiff's prescriptions and reported that she was

---

[1] The ALJ pointed out in his decision that in July 2011, consulting examiner Dr. Susan Santarpia noted that plaintiff denied any current treatment or medications. Additionally, Dr. Santarpia noted a guarded diagnosis "given current lack of treatment." T. 218. The ALJ appeared to hold plaintiff's lack of treatment against her, stating that she did not obtain treatment "from her alleged onset date until September 2011," and that "[e]ven then, her attendance was only 'fair' and her compliance with medications was not always consistent." T. 29. These statements by the ALJ were improper given plaintiff's psychiatric diagnoses. Rather than indicating a lack of a serious mental impairment, plaintiff's noncompliance was very possibly a further indicator that her mental health impairments interfered with her functioning. See, e.g., Reals v. Astrue, 2010 WL 654337, *2 (W.D. Ark. Feb. 19, 2010) ("According to the DSM, patients suffering from . . . bipolar disorder also suffer from . . . poor insight . . . predispos[ing] the individual to noncompliance with treatment[.]").

diagnosed with schizoaffective disorder, stating, "[s]chizoaffective disorder is an uninterrupted period of illness during which, at some time, there is . . . a mood disorder episode concurrent with two or mor[e] of the following: delusions, hallucinations, disorganized speech, catonic [*sic*] behavior, or negative symptoms." T. 291. Dr. Grace noted that plaintiff was "currently stable but in past has [had] manic depressive symptoms, delusions, hallucinations, and negative symptoms." Id. Her symptoms also included impairment in impulse control, mood disturbance, paranoid thinking or inappropriate suspiciousness, intense and unstable interpersonal relationships and impulsive and damaging behavior, inflated self-esteem, and pressures of speech.

Dr. Grace declined to give any assessment of plaintiff's functional capacities, stating that he could not "determine due to never observing [plaintiff] in a work setting." T. 293. Although Dr. Grace noted that plaintiff could maintain socially appropriate behavior for 50-minute sessions with her counselor, she "[did] have an[] underlying psychotic process." T. 295.

It is unclear from Dr. Grace's statements, which indicated that plaintiff was "known to [the] agency since [2007]," whether he was actually one of plaintiff's regular treating providers. It is also unclear whether LMSW Prus was plaintiff's treating counselor or whether she merely provided a narrative summary of plaintiff's treatment. Similarly, it cannot be determined from this record the

7

extent of the role played by the nurse practitioner in plaintiff's treatment.

The regulations state that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945 (emphasis supplied) (citing 20 C.F.R. §§ 416.912(d) through (e)). Although an ALJ has no duty to further develop the record "where there are no obvious gaps" and where the ALJ possesses a "complete medical history," see Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999), the record in this case indicated a significant gap in plaintiff's medical history.

Given the clear indications in the record that important treatment notes were missing, the ALJ failed in his duty to further develop the record in order to obtain a full longitudinal picture of plaintiff's mental health treatment. See, e.g., Simcox v. Colvin, 2016 WL 228359, *4 (W.D.N.Y. Jan. 19, 2016) (remanding where plaintiff testified, and record further indicated, that plaintiff treated regularly for mental health issues, but ALJ failed to obtain those records) (citing Corey v. Astrue, 2009 WL

4807609, *4 (N.D.N.Y. Dec. 8, 2009) (noting that ALJ had duty to develop record where there was a "gap in the record that must be remedied"); Metaxotos v. Barnhart, 2005 WL 2899851, *5 (S.D.N.Y. Nov. 3, 2005) (remanding where ALJ failed to develop the record by not obtaining treatment notes, records, or opinions from plaintiff's treating psychiatrist)).

The ALJ's error was especially significant in this case for several reasons. First, the history of plaintiff's mental health treatment that does appear in the record indicates a diagnosis of schizoaffective disorder accompanied by quite serious symptoms, which were managed with antipsychotic medications designed to treat the mood instability and psychotic features of bipolar and schizoaffective disorder. The record also indicates a history of a bipolar disorder diagnosis, although the ALJ did not find this to be a severe impairment in his decision. At the time of the ALJ's decision, plaintiff was prescribed Haldol, Depakote, and Cogentin, apparently by a treating nurse practitioner at NCHC. Considering these circumstances, it is clear that regular notes of plaintiff's mental health treatment were necessary for the ALJ to fully evaluate plaintiff's mental impairments.

Second, the ALJ's decision to give "significant" weight to the opinions of the "consulting examiners," including non-examining state agency review psychiatrist Dr. D. Mangold, was especially erroneous considering the fact that neither of these medical

professionals had the opportunity to review plaintiff's complete longitudinal history as of the time of the ALJ's decision. By the time the ALJ made his decision, more than a year following the issuance of the consulting opinions, additional evidence of plaintiff's treatment existed. However, the ALJ elected not to obtain this evidence and instead relied on the opinions of a consulting examiner and a non-examining review psychiatrist. These medical sources could not provide the valuable insight of a "detailed, longitudinal picture" of a claimant's condition. See 20 C.F.R. § 416.927(c)(2).

Third, as plaintiff points out, on this record it is unclear whether Dr. Grace was a treating physician for purposes of the treating physician rule. See 20 C.F.R. § 416.927(c). Consequently, the ALJ could not have known whether the treating physician rule applied to Dr. Grace's assessment. Although Dr. Grace did not opine as to work-related functional limitations, he did opine that plaintiff carried a diagnosis of schizoaffective disorder, took serious psychotropic medications for its treatment, and had significant symptoms as a result of her condition, including delusions and hallucinations. Because the nature and extent of Dr. Grace's treatment relationship with plaintiff is unknown, the ALJ could not have known whether Dr. Grace's opinion was entitled to controlling weight.

For the above reasons, the Court concludes that the ALJ failed to properly develop this record and the case is therefore remanded for further consideration. On remand, the ALJ is specifically directed to:

(1) clarify Dr. Grace's treatment relationship with plaintiff;

(2) obtain an opinion from Dr. Grace, or another of plaintiff's treating providers, as to whether plaintiff suffers from a medically determinable impairment to the degree described in Listing 12.03 (Schizophrenic, paranoid and other psychotic disorders) or 12.04 (Affective disorders). See 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.03, 12.04. The ALJ should also explicitly address any other listing indicated by plaintiff's full medical record, when developed;

(3) obtain a detailed functional assessment regarding plaintiff's work-related capabilities from a treating source at NCHC who is fully familiar with plaintiff's treatment and longitudinal history; and

(4) obtain a full record of treatment notes from NCHC.
These instructions should not be read to preclude the ALJ from seeking out any additional medical records or opinion evidence as he deems necessary for a proper consideration of plaintiff's RFC.

The Court declines to address plaintiff's second and final contention, that the RFC improperly failed to incorporate the reviewing state agency psychologist's finding that plaintiff had

moderate difficulties in concentration, persistence, or pace. Because the record on remand will "necessarily be altered" upon its further development, see Crowley v. Colvin, 2014 WL 4631888, *5 (S.D.N.Y. Sept.15, 2014), the ALJ's analysis of the substantial evidence of record will be altered as well.

## V. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 11) is denied and plaintiff's motion (Doc. 8) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              **S/Michael A. Telesca**
                                              HON. MICHAEL A. TELESCA
                                              United States District Judge

Dated:    February 17, 2016
             Rochester, New York.